DANNY E. ROBINSON, JR.,

        Plaintiff,

        v.                                Case No. 26-CV-1060

DEPARTMENT OF CORRECTIONS,
RANDALL HEPP,
YANA PUSICH,
JACOB GRIPPENTROG,
JEREMY STANIC, and
EMILY PROPSON,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Danny E. Robinson, Jr., who is currently housed at the Milwaukee Secure Detention Facility and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. On June 18, 2026, the Court screened and dismissed the original complaint but allowed Plaintiff to file an amended complaint. (ECF No. 3.) Plaintiff filed an amended complaint on July 10, 2026. The Court will now screen Plaintiff's amended complaint.

### SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of

Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the amended complaint are just that, allegations; they are Plaintiff's version of the events that have purportedly occurred. With

this in mind, the Court will summarize Plaintiff's allegations as presented in the amended complaint.

During all times relevant to the amended complaint, Plaintiff was an inmate at Waupun Correctional Institution. In 2023, Plaintiff met with Deputy Warden Emily Propson to discuss corruption at Waupun Correctional Institution. Starting in June or July 2023, Plaintiff entered into a romantic and sexual relationship with Deputy Warden Propson. They engaged in three sexual encounters over the span of three months. Plaintiff asserts that he "substantiated cellphone footage from within the institution as well as access to currency only available to correctional staff." Plaintiff decided to end the affair because he was engaged to another woman. He asserts that his decision to end the affair resulted in backlash, retaliation, and abuse by security staff. (ECF No. 5 at 5.)

Plaintiff asserts that Warden Randall Hepp would engage in "indirect talks" with Plaintiff through Deputy Warden Propson. He contends that Warden Hepp had full knowledge of the illicit meetings between Plaintiff and Deputy Warden Propson and turned a blind eye to the misconduct. He asserts that Warden Hepp participated in the cover up of the relationship and retaliation by institution staff. Plaintiff alleges that institution staff, who were under Warden Hepp's control, falsified documents and maliciously placed Plaintiff in temporary lock up (TLU) status. (*Id.* at 6.)

In August 2023, Plaintiff was taken from his cell and met with several officers of the Security Department, including Security Director Yana Pusich. Once Security Director Pusich and Plaintiff were alone, Security Director Pusich gave Plaintiff a cellphone and directed him to speak to Deputy Warden Propson. Security Director Pusich had firsthand knowledge of the affair. Plaintiff asserts that, following the incident, Security Director Pusich engaged in the attempted

3

cover up of the affair and retaliation through abuse of discretion, a false TLU placement, organized assaults by inmates, and abuse via security staff. (*Id.* at 7.)

Plaintiff asserts that, after he reported the sexual relationship, Security Officer Jeremy Stanic was involved in retaliation and false TLU placements to discourage Plaintiff from following through with a sexual abuse claim. He asserts that Security Officer Stanic was the officer that escorted Plaintiff to TLU. Plaintiff also alleges that Security Officer Stanic engaged in "torture tactics" and ignored Plaintiff's pleas for help while Plaintiff was in mechanical restraints on November 14, 2024, which caused Plaintiff to develop hypothermia and be hospitalized; falsified documents; and took a "mob-like" mentality to collude with the security department. (*Id.* at 7–8.)

In October or November 2023, inmates threatened to attack Plaintiff in the showers. Plaintiff told Security Officer Jacob Grippentrog about the threats. He asserts that Security Officer Grippentrog, who was "very familiar" with Plaintiff and the alleged sexual abuse, ignored the threat and told Plaintiff to "shower and fight everyone." Plaintiff went to shower with full boxing gloves on and was assaulted by another inmate. He asserts that Security Officer Grippentrog, a member of the security department, ignored the threat in retaliation of Plaintiff reporting sexual abuse to intimidate Plaintiff and discourage him from pursuing the issue. Plaintiff alleges that Security Officer Grippentrog was also involved in the November 14, 2024, mechanical restraint incident. (*Id.* at 8–9.)

## ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S.*

4

*v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

As an initial matter, Plaintiff alleges that the Department of Corrections violated his constitutional rights. The Wisconsin Department of Corrections is not a proper defendant because it is not a suable entity under § 1983. *See Castillo v. Cook Cty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993); *Dobbey v. Ill. Dep't of Corrs.*, 574 F.3d 443, 444 (7th Cir. 2009). Therefore, the Department of Corrections will be terminated as a defendant in this case.

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishment." U.S. Const. amend. VIII. A prison official's conduct constitutes "cruel and unusual punishment" if (1) the conduct is "'objectively, sufficiently serious'" and (2) the prison official has "a 'sufficiently culpable state of mind.'" *Walton v. Nehls*, 135 F.4th 1070, 1072 (7th Cir. 2025) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted)). A prison official's conduct is "sufficiently serious—or objectively harmful—if it is 'incompatible with the evolving standards of decency that mark the progress of a maturing society'" or if it involves "'the unnecessary and wanton infliction of pain.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)). The prison official must "act with 'deliberate indifference to a substantial risk of serious harm' of which they are 'subjectively aware.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

"[U]nwanted sexual contact between a prison official and prisoner is objectively harmful under the Eighth Amendment." *Id.* Plaintiff seems to suggest that *any* sexual relationship between a prisoner and a prison official is itself a constitutional violation. However, the Seventh Circuit has declined to adopt a legal presumption that any sexual activity between a prisoner and prison official is nonconsensual and thus violates the Constitution. *Id.* at 1072. Instead, it explained that

5

"[a]bsent evidence of coercion," evidence that a prisoner and prison official's sexual relationship was consensual defeats an Eighth Amendment claim. *Id.* at 1079; *see also Walton v. Nehls*, No. 22-C-7, 2023 WL 346041, at *3 (E.D. Wis. Jan. 20, 2023) ("[C]onsensual sexual contact does not give rise to a constitutional violation." (citing *Bentley v. Baenen*, No. 17-cv-1791, 2018 WL 1108701, at *2–3 (E.D. Wis. Feb. 27, 2018); *Torgerson v. Rasmussen*, No. 20-cv-1297 (E.D. Wis. Sept. 28, 2022))).

Plaintiff does not allege that he did not consent to the sexual relationship or that Deputy Warden Propson coerced him into engaging in a sexual relationship. In fact, he alleges that the relationship was a "romantic" one and that he ultimately ended the "affair" because he was engaged to another woman. Although Plaintiff asserts that the relationship violated the "ethics and work rules of DOC employees," (ECF No. 5 at 5), a violation of prison policies does not violate the Constitution. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). The amended complaint contains no allegations from which the Court can infer that Deputy Warden Propson knew of and was deliberately indifferent to an excessive risk that her conduct would seriously harm Plaintiff. Therefore, Plaintiff fails to state an Eighth Amendment claim against Deputy Warden Propson.

Plaintiff also seeks to proceed on First Amendment retaliation and Fourteenth Amendment equal protection claims against Deputy Warden Propson. Aside from Plaintiff's use of the legal terms "retaliation" and "equal protection," the amended complaint contains no allegations to support retaliation and equal protection claims against Deputy Warden Propson.

Plaintiff also asserts that Warden Hepp violated his rights because he knew about the illicit conduct and meetings between Plaintiff and Deputy Warden Propson and "turned a blind eye to the misconduct." (ECF No. 5 at 6.) There is no *respondeat superior* liability under § 1983. *See*

*Kemp v. Fulton Cty.*, 27 F.4th 491, 498 (7th Cir. 2021). However, a supervisor can be liable for the conduct of others if he knew about the conduct and "facilitated, approved, condoned, or turned a blind eye" to a constitutional violation. *Id.* (internal quotation marks and citation omitted). Because Deputy Warden Propson's conduct did not violate Plaintiff's Eighth Amendment rights, there are no allegations from which the Court can infer that Warden Hepp condoned or turned a blind eye to a constitutional violation.

Plaintiff also claims that Warden Hepp contributed to the attempted cover up of the affair and retaliation through his control of the institution departments. He asserts that institution staff, with whom Warden Hepp had "personal dealings with," falsified documents and maliciously placed Plaintiff in TLU status. To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff does not allege what Warden Hepp personally did to retaliate against him. Even though Plaintiff alleges that Warden Hepp had "personal dealings with" his staff and that the staff retaliated against Plaintiff, the amended complaint contains no allegations from which the Court can infer that Warden Hepp knew about and "facilitated, approved, condoned, or turned a blind eye" to the conduct. *Kemp*, 27 F.4th at 498. In short, Plaintiff has failed to state a First Amendment retaliation claim against Warden Hepp.

Plaintiff asserts that Security Director Pusich, Security Officer Stanic, and Security Officer Grippentrog knew about Plaintiff's sexual relationship with Deputy Warden Propson. He contends that all of their purported misconduct against him occurred as part of a general "cover up" and

conspiracy to retaliate against Plaintiff and prevent him from pursuing a claim against Deputy Warden Propson. Plaintiff's conclusory assertion that Defendants were part of a conspiracy does not transform his claims against the defendants into a "series of transactions" sufficient to satisfy Rule 20. To state a conspiracy claim under 42 U.S.C. § 1985, the plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999) (citation omitted). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden . . . . [A] complaint must contain factual allegations suggesting that the defendants reached a meeting of the minds . . . to deprive [a plaintiff] of his constitutional rights." *Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2002). Although Plaintiff purports to assert the existence of a conspiracy, the amended complaint is devoid of facts to support such a claim. His vague and conclusory allegations of a "cover up" do not support a conspiracy claim under § 1985.

Plaintiff's allegations against Security Director Pusich, Security Officer Stanic, and Security Officer Grippentrog are not properly joined in this action. *See* Fed. R. Civ. P. 20. Therefore, pursuant to Federal Rule of Civil Procedure 21, the Court will "drop" the claims against these defendants from this action. If Plaintiff wants to pursue these claims, he must do so in a separate case or cases. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that a plaintiff cannot bring unrelated claims against different defendants in the same case). Plaintiff is advised that he must pay the filing fee for every new case he files.

This plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir.

1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) **for failure to state a claim**.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be emailed to DLSFedOrdersEastCL@doj.state.wi.us.

Dated at Green Bay, Wisconsin on July 21, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

9